```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
EDWIN JOSUE PADILLA MOLINA,

                                   Petitioner,

              -against-

FRANCIS DELEON, in his official capacity as Acting
Assistant Field Office Director for the New York Field
Office for Immigration and Customs Enforcement; KRISTI
NOEM, in her official capacity as U.S. Secretary of
Homeland Security; PAMELA BONDI, in her official
capacity as Attorney General of the United States of
America,

                                   Respondents.
------------------------------------------------------------------------X
```

FILED
CLERK

1:43 pm, Dec 23, 2025

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

**MEMORANDUM & ORDER**
25-cv-06526 (JMA)

**AZRACK, United States District Judge:**

On November 23, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Edwin Josue Padilla Molina ("Petitioner") after pulling him over as he drove his mother-in-law to work in Central Islip, New York. The next day, Petitioner filed the instant petition for a writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241. (ECF No. 1.) At the time that he filed the Petition, Petitioner was detained at the Central Islip Processing Center in Suffolk County. (ECF No. 8-1 ¶¶ 11–12.) ICE subsequently transferred Petitioner to the Nassau County Correctional Facility and, later, to the Metropolitan Detention Center ("MDC") in Kings County. (Id.; ECF No. 12.) On December 9, 2025, the Court issued a Temporary Restraining Order, finding that Petitioner was likely to succeed on the merits of his petition and ordering his immediate release from custody. (ECF No. 16.) For the reasons set forth below, the petition for a writ of habeas corpus is now GRANTED.

**I.      BACKGROUND**

Petitioner is a resident of Central Islip who entered the United States in 2013, when he was 14 years old. (ECF No. 1 ¶ 12.) On November 22, 2013, the United States Border Patrol arrested

Petitioner near the Rio Grande Valley in Texas and issued him a Notice to Appear ("NTA"), charging Petitioner as inadmissible as a noncitizen "present in the United States without being admitted or paroled." 8 U.S.C. § 1182(a)(6)(A)(i); (ECF No. 8-1 ¶¶ 3–4). Because Petitioner qualified as an Unaccompanied Alien Child, see 8 U.S.C. § 1232, he soon was released to a family sponsor. (ECF No. 8-1 ¶¶ 5–6.) Petitioner states, and Respondents do not contest, that he complied with the NTA and attended all hearings related to his removal proceedings. (ECF No. 13 at 2.) On November 23, 2016, an Immigration Judge administratively closed Petitioner's removal proceedings, (ECF No. 8-1 ¶ 9), although in November 2025 these proceedings were recalendared upon request from the Department of Homeland Security, (id. ¶¶ 9, 13).

For twelve years, Petitioner has lived continuously in the United States. (ECF No. 1 ¶ 5.) He has never been arrested or convicted of any crime. (Id. ¶ 14.) He and his partner, who is a lawful permanent resident, are expecting their first child in March 2026. (Id. ¶ 15.)

On November 23, 2025, Petitioner was driving near his home in Central Islip with his pregnant partner and his mother-in-law. (Id. ¶ 1.) ICE agents stopped Petitioner's vehicle, arrested him, and transported him to the Central Islip Processing Center, where he was served with a Form I-200, Warrant for Arrest of Alien. (Id.; ECF No. 8-1 ¶ 11; ECF No. 10-4.)

On November 24, 2025, Petitioner initiated the instant action by filing a petition for a writ of habeas corpus. (ECF No. 1.) That same day, the Court issued an order to show cause directing Respondents to show cause why a writ of habeas corpus should not be issued. On December 1, 2025, Respondents filed their opposition to the Petition. (ECF No. 8.) On December 1, 2025, Petitioner filed a motion for a temporary restraining order ("TRO") seeking his immediate release, (ECF No. 9), which Respondents opposed, (ECF No. 12). On December 5, 2025, Petitioner filed his reply in support of the Petition, (ECF No. 13), and his reply in support of the TRO, (ECF No. 15).

During the briefing concerning the requested TRO, on December 2, 2025, the Court ordered the parties to submit supplemental briefing addressing the impact on the instant petition, if any, of an order issued by the Honorable Sunshine Sykes in Bautista v. Santacruz, No. 25-cv-01873, 2025 WL 3288403 (C.D. Cal. Nov. 25, 2025), which certified a nationwide class and issued class-wide declaratory relief. Id. at *9 (certifying a class action of noncitizens who "(1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination[,]" and declaring that detention of any class members must comply with 8 U.S.C. § 1226(a)). The parties submitted that requested briefing on December 3, 2025. (ECF No. 10; ECF No. 11.)

During this motion practice, ICE transferred Petitioner between three detention facilities, all in the Eastern District of New York, culminating in his detention at the MDC. (ECF No. 8-1 ¶ 12; ECF No. 12.) On December 9, 2025, the Court granted Petitioner's motion for a TRO and ordered his immediate release from custody. (ECF No. 16.) He was released from the MDC that same day. (ECF No. 17.)

## II. DISCUSSION

A district court has authority to grant a writ of habeas corpus pursuant to Section 2241 "whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). This jurisdiction includes habeas petitions filed by immigration detainees. See Velasco Lopez v. Decker, 978 F.3d 842, 850 (2d Cir. 2020).

Petitioner seeks a writ of habeas corpus based on violations of: (1) the Immigration and Nationality Act ("INA") and implementing regulations; (2) his procedural due process rights under

3

the Fifth Amendment; (3) his substantive due process rights under the Fifth Amendment; (4) the Fourth Amendment; and (5) the Administrative Procedure Act. (ECF No. 1 ¶¶ 46–75.)[1]

### A.   Statutory Basis for Detention

The parties disagree as to which of two INA provisions—8 U.S.C. § 1225(b)(2)(A) ("Section 1225") or 8 U.S.C. § 1226(a) ("Section 1226")—provides the statutory basis for Petitioner's detention.  Under Section 1225, detention is mandatory, with certain exceptions not relevant here, "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted[.]"  8 U.S.C. § 1225(b)(2)(A).  Under Section 1226, detention is discretionary "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a).  Unlike individuals detained pursuant to Section 1225, an individual who is detained pursuant to Section 1226 is entitled to an individualized custody determination upon arrest and to receive a bond redetermination hearing before an immigration judge upon request. 8 C.F.R. §§ 1003.19; 1236.1(c)(8), (d)(1).

Respondents argue that Petitioner was lawfully detained under Section 1225.  As Respondents point out, Petitioner falls within the statutory definition of an "applicant for admission" because he is "an alien present in the United States who has not been admitted." 8 U.S.C. § 1225(a).  Respondents argue that <u>all</u> applicants for admission "are subject to mandatory detention during the pendency of their removal proceedings . . . and are not eligible for a bond." (ECF No. 8 at 15–16.)

Petitioner responds that Section 1225 does not apply to him because, at the time of his

---

[1] The administrative exhaustion requirement is prudential, and waiver is warranted in this case.  Given the BIA's policy of upholding mandatory detention for individuals in Petitioner's circumstances, the Court finds that "there are no administrative remedies available that could provide Petitioner with the relief he seeks." <u>Artiga v. Genalo</u>, No. 25-cv-5208, 2025 WL 2829434, at *4 (E.D.N.Y. Oct. 5, 2025).

arrest, he was already present inside the United States and so was not "seeking admission" within the scope of Section 1225. (ECF No. 13 at 5.) He argues that because he has been living in the United States for over a decade, he can be detained only pursuant to Section 1226. (Id. at 3–4.) He also notes that Respondents' own administrative warrant for his arrest cites to Section 1226. (Id.; ECF No. 10-4.)

This Court agrees with Petitioner that he is detained subject to Section 1226, not Section 1225.[2] In so holding, the Court joins the hundreds of district court decisions that have rejected Respondents' expansive interpretation of Section 1225 as inconsistent with the plain text and overall structure of the INA. See, e.g., Yao v. Almodovar, No. 25-cv-9982, 2025 WL 3653433, at *6 (S.D.N.Y. Dec. 17, 2025) (rejecting Respondents' interpretation of Section 1225 based on the plain language of Sections 1225 and 1226, as well as the fact that "[Sections] 1225 and 1226 are directed to different stages in a noncitizen's interactions with immigration authorities"); O.F.B. v. Maldonado, No. 25-cv-6336, 2025 WL 3277677, at *4 (E.D.N.Y. Nov. 25, 2025) (rejecting Respondents' statutory interpretation and reasoning that it "only makes sense if you read Section 1225 in a vacuum"); Sarmiento Guerrero v. Noem, No. 25-cv-5881, 2025 WL 3214787, at *3–5 (E.D.N.Y. Nov. 18, 2025) (concluding that Congress meant "applicant for admission" and "alien seeking admission" to have distinct meanings, and noting that other provisions of Section 1225, as well as that provision's title and position within the INA, all indicate that Section 1225 deals with individuals arriving at the nation's borders); Hyppolite v. Noem, No. 25-cv-4304, 2025 WL 2829511, at *9 (E.D.N.Y. Oct. 6, 2025) (applying canons of statutory interpretation to find that

---

[2] ICE's own documentation of Petitioner's detention bolsters this finding. Respondents fail to explain how Petitioner could be detained pursuant to Section 1225 when the warrant authorizing his detention cites to Section 1226. The Court agrees with Petitioner that "if Mr. Padilla Molina was detained pursuant to one provision, he cannot be subject to the other." (ECF No. 13 at 4 (quoting Lopez Benitez v. Francis, 795 F. Supp. 3d 475, 485 (S.D.N.Y. 2025)) (cleaned up)). However, the Court need not rely on this argument because the Court finds that Petitioner presents the more convincing interpretation of the statutory text.

"'seeking admission' is meant to refer to those who are presenting themselves at the border, or who were recently apprehended just after entering"); Artiga v. Genalo, No. 25-cv-5208, 2025 WL 2829434, at *7–8 (E.D.N.Y. Oct. 5, 2025) (similar); J.U. v. Maldonado, No. 25-cv-04836, 2025 WL 2772765, at *7–8 (E.D.N.Y. Sept. 29, 2025) (similar); Demirel v. Fed. Detention Ctr., No. 25-cv-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (collecting cases from around the country); Centeno Ibarra v. Warden of the Fed. Det. Ctr. Philadelphia, No. 25-cv-6312, 2025 WL 3294726, at *7 (E.D. Pa. Nov. 25, 2025) ("The canon of constitutional avoidance favors the statutory interpretation which applies § 1226 detention to noncitizens like [the Petitioner] because it avoids the potential constitutional due process concerns that the government's interpretation would raise.").

The Seventh Circuit, the only Court of Appeals to have addressed this interpretive question, recently reached the same result. Castanon-Nava v. U.S. Dep't of Homeland Sec., No. 25-3050, 2025 WL 3552514, at *8–10 (7th Cir. Dec. 11, 2025) (finding that the government defendants were not likely to prevail on this issue because "ICE's authority to detain a noncitizen discovered within the country derives from § 1226(a) and not from § 1225(b)[,]" and "Defendants' construction would render § 1225(b)(2)(A)'s use of the phrase 'seeking admission' superfluous, violating one of the cardinal rules of statutory construction").

Although the Supreme Court has not decided the question, dicta from Jennings v. Rodriguez lends further support to Petitioners' interpretation. 583 U.S. 281, 289 (2018) (explaining that Section 1225 "authorizes the Government to detain certain aliens seeking admission into the country," whereas Section 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings") (emphasis added).

Finally, the Court notes that Petitioner appears to belong to the Bond Eligible Class

6

certified in Bautista.³  The Bautista Plaintiff-Petitioners brought a challenge under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A), to a July 2025 DHS policy "determining that [Section 1225] would serve as the applicable immigration detention authority rather than [Section 1226] for all 'applicants for admission.'"  Amended Order at 2, Bautista v. Santacruz, No. 25-cv-01873 (C.D. Cal. Dec. 18, 2025), ECF No. 93.  Based on the text and structure of the INA, the Bautista court held that, "[w]here the DHS policy renders all of the Bond Eligible Class subject to mandatory detention under § 1225(b)(2), the putative class members have been deprived of their right to a bond hearing under § 1226(a)."  Id. at 45.  After this Court sought briefing from the parties on the relevance of Bautista to the instant Petition, Judge Sykes issued an Amended Order clarifying the scope of the class certification and class relief in that case.  See id. at 40 (describing putative class members as "noncitizens who already arrived in the United States without inspection, or will enter the United States and not face inspection[,]" and who are "subject to mandatory detention due to Respondents' improper interpretation of the INA").  On December 18, 2025, Judge Sykes entered final judgment in favor of the Bond Eligible Class, (1) declaring that Bond Eligible Class members are detained under Section 1226 and are not subject to mandatory detention under Section 1225, and (2) vacating the July 8, 2025 DHS policy determination that all "applicants for admission" are subject to mandatory detention under Section 1225.  Final Judgment, Bautista v. Santacruz, No. 25-cv-01873 (C.D. Cal. Dec. 18, 2025), ECF No. 94.

To the extent that Petitioner is a member of the nationwide class certified in Bautista, the final judgment in that case decided certain issues in Petitioner's favor—including the parties'

---

³ As noted supra, the class certified in Bautista is defined as: "All noncitizens in the United States without lawful status who (1) have entered or will enter the United States without inspection; (2) were not or will not be apprehended upon arrival; and (3) are not or will not be subject to detention under 8 U.S.C. § 1226(c), § 1225(b)(1), or § 1231 at the time the Department of Homeland Security makes an initial custody determination."  Amended Order at 4, Bautista v. Santacruz, No. 25-cv-01873 (C.D. Cal. Dec. 18, 2025), ECF No. 93.

dispute over the proper interpretation of Sections 1225 and 1226—that would presumably have preclusive effect in this litigation.[4]  However, it is unnecessary for the Court to decide whether Bautista controls in the instant case because, as explained above, the Court has already determined that the interpretation of Sections 1225 and 1226 advanced by Petitioner and adopted by hundreds of district court decisions is the correct one.

Accordingly, the Court holds that Section 1225 does not apply to Petitioner, who has been present in the United States for years and so was not "seeking admission" to this country at the time of his arrest.  Petitioner's detention without an individualized custody determination or a bond hearing was unlawful because it failed to comply with the procedural guarantees set forth in 8 U.S.C. § 1226(a) and its implementing regulations.

**B.   Due Process**

The Court additionally finds that Respondents' detention of petitioner without an individualized custody determination or a bond hearing violated his Fifth Amendment right to due process.  The Court joins a multitude of district court decisions that have reached the same result in similar cases.  See, e.g., Yao, 2025 WL 3653433, at *11; J.U., 2025 WL 2772765, at *10; O.F.B., 2025 WL 3277677, at *6; Hyppolite, 2025 WL 2829511, at *16; Artiga, 2025 WL 2829434, at *9; Ye v. Maldonado, No. 25-cv-6417, 2025 WL 3521298, at *8 (E.D.N.Y. Dec. 8, 2025); Rodriguez-Acurio v. Almodovar, No. 2:25-cv-6065, 2025 WL 3314420, at *31 (E.D.N.Y. Nov. 28, 2025).

Noncitizens present in the United States are entitled to full protection under the Due Process Clause of the Fifth Amendment.  Zadvydas v. Davis, 533 U.S. 678, 693 (2001) ("[T]he

---

[4] Respondents' position is that Petitioner does not belong to the Bautista class because he was apprehended by Border Patrol Agents upon his initial arrival in the United States, back in 2013. ECF No. 10 at 1. Petitioner argues that he is a class member because his current detention arises from his apprehension in November 2025, over a decade after his arrival. ECF No. 11 at 4–5.

Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); see also Velasco Lopez, 978 F.3d at 850. Courts in this circuit apply the balancing test set forth in Mathews v. Eldridge, 424 U.S. 319 (1976), when determining whether a habeas petitioner in immigration detention was deprived of adequate due process. See Velasco Lopez, 978 F.3d at 851. The three Mathews factors are: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. at 335.

All three Mathews factors support Petitioner's case. *First*, the private interest at stake, "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." Zadvydas, 533 U.S. at 690; see also Velasco Lopez, 978 F.3d at 981 (declaring, in the context of a habeas petition for release from ICE custody, that the interest in being free from incarceration is "the most significant liberty interest there is"). *Second*, the risk of erroneous deprivation is significant. As Respondents' brief makes clear, it is now the Bureau of Immigration Appeals' ("BIA") position that all noncitizens who are present in the United States without having been admitted are subject to mandatory detention. (ECF No. 8 at 14, 18 (referring to a recent BIA decision, Matter of Yajure Hurtado, 29 I&N Dec. 216, 218 (BIA 2025), which made the expansive interpretation of Section 1225 official agency policy)). Moreover, Respondents have not articulated any "change in circumstances" since Petitioner's release, over a decade ago, that justify his detention. See O.F.B., 2025 WL 3277677, at *6. *Finally*, the Government's interest in detaining individuals under Section 1226 "is valid where it advances a legitimate governmental purpose[,]" such as "(1)

9

ensuring that noncitizen [sic] do not abscond and (2) ensuring they do not commit crimes." Velasco Lopez, 978 F.3d at 854.  Respondents have not argued that Petitioner poses a flight risk or a danger to the community, nor is there any evidence in the record that he would pose such a risk.  Therefore, Respondents have failed to show that Petitioner's detention serves any legitimate government interest.

Accordingly, the Court finds that Respondents violated Petitioner's Fifth Amendment right to due process when Respondents detained Petitioner without providing the process due to him under Section 1226 and its implementing regulations.

Because the Court concludes that Petitioner's purported detention under Section 1225 and Respondents' refusal to provide Petitioner with an individualized custody determination or a bond redetermination hearing violate the INA and the Fifth Amendment, the Court does not reach Petitioner's claims under the Fourth Amendment or the Administrative Procedure Act.

### III.    SCOPE OF RELIEF

Upon finding that a petitioner has been unlawfully detained, a district court "may" grant a writ of habeas corpus and "dispose of the matter as law and justice so require."  28 U.S.C. §§ 2241(a), 2243.  Release from detention is the "typical remedy" for "unlawful executive detention," Munaf v. Green, 553 U.S. 674, 693 (2008), and Respondents posit no alternative remedy here. The Court agrees with the analysis in Yao, 2025 WL 3653433, at *12, and similar cases, and finds that, in the circumstances here, release is the appropriate remedy.  The Court already granted a temporary restraining order that directed Petitioner's release.  (ECF No. 16).  The Court hereby converts that temporary relief into a final order granting Petitioner release from custody.[5]

---

[5] Petitioner may file a formal motion for attorney's fees with fourteen (14) days of this Order.

## IV. <u>CONCLUSION</u>

For these reasons, Petitioner's detention without an individualized custody determination and without a bond hearing violates the INA and the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus under 28 U.S.C. § 2241, (ECF No. 1), is GRANTED.

**SO ORDERED.**

Dated:   December 23, 2025
         Central Islip, New York

                                          /s/ (JMA)
                                     JOAN M. AZRACK